NOT FOR PUBLICATION

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESSE HEMINGWAY, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| MR. LYDELL SHEERS, et al., | : |
| | : |
| Defendants. | : |

Civil Action
07-364 (SDW)

O P I N I O N

**APPEARANCES:**

> JESSE HEMINGWAY, Plaintiff pro se
> #507769
> MIDSTATE CORRECTIONAL FACILITY
> P.O. BOX 866 RANGE ROAD
> WRIGHTSTOWN, NEW JERSEY 08662

### Susan D. Wigenton, District Judge

PLAINTIFF JESSE HEMINGWAY (hereinafter "Plaintiff") currently confined at Midstate Correctional Facility, Wrightstown, New Jersey (hereinafter "Facility"), seeks to bring this 42 U.S.C. § 1983 action in forma pauperis without prepayment of fees pursuant to 28 U.S.C. § 1915. Plaintiff submitted his (1) affidavit of indigence and institutional account statement pursuant to 28 U.S.C. § 1915(a) (1998); and (2) his complaint (hereinafter "Complaint").

Dockets.Justia.com

Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

## BACKGROUND

Naming New Jersey Department of Corrections (hereinafter "NJDOC"), the warden of his Facility (hereinafter "Warden"), Dr. Burnstein and medical staff employed at the Facility (hereinafter, collectively, "Medical Staff") and Officer Seaburne (hereinafter "Officer") as Defendants in this action, Plaintiff alleges that Defendants violated Plaintiff's constitutional rights during the aftermath of an incident that (1) took place on May 19, 2005, and (2) resulted in Plaintiff being stabbed by other inmates with icepicks in his arm, neck and head. See Compl., Exs. A and B. Plaintiffs specifies that NJDOC and the Warden are liable to Plaintiff because they are the parties responsible for training of corrections officers and medical staff, as well as for creation of search procedures and investigation of incidents. See id., Ex. A.

Plaintiff further maintains that the Officer is liable to Plaintiff because the Officer (1) recovered an icepick which Plaintiff removed from Plaintiff's head after being stabbed, and (2) arranged for Plaintiff to be taken to a medical unit for

medical care. See id., Ex. B. Plaintiff finally asserts that the Medical Staff is liable to Plaintiff because the Medical Staff (1) did not treat the stabs wounds properly by failing to sufficiently disinfect the wounds, administer antibiotics to Plaintiff to ensure that Plaintiff would not develop any infections, conduct a Computerized Axial Tomography Scan test of Plaintiff's head or avail Plaintiff to examination by a "specialist," see id., Exs. A and B; (2) failed to treat Plaintiff's head wound in its entirety, see id., Ex. B; and (3) did not record the injuries in Plaintiff's medical record, hence preventing Plaintiff from obtaining further medical treatment during the remainder of Plaintiff's confinement. See id., Exs. A and B. Consequently, Plaintiff seeks injunctive relief in the form of changes in the Facility's medical procedures. See id., Ex. A.

## STANDARD OF REVIEW

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the

congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants. However, in determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions." Id. Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).


## DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: (1) that the alleged

conduct was committed by a person acting under color of state law; and (2) as a result, the plaintiff was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. See West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). Since there appears to be no doubt that Defendants' actions in the case at bar were done under color of state law, the Court's analysis is limited solely to the second prong of the inquiry.

Liberally construing Plaintiff's Complaint, the Court interprets it as asserting three types of claims: (a) medical claims against the Medical Staff and the Officer; (b) vicarious liability claims against NJDOC and the Warden; and © failure to protect claims against the Warden and Officer.


I.    **Plaintiff's Medical Claims Against the Medical Staff and Officer**

Plaintiff has a protected right in being incarcerated at a place of confinement confirming to the standards set forth by the Eighth Amendment. The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that ""he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). In its

prohibition of "cruel and unusual punishments, the Eighth Amendment
. . . imposes duties on [prison] officials, who must provide humane
conditions of confinement; prison officials . . . must take
reasonable measures to guarantee the safety of the inmates."
Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), see Helling, 509
U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990);
Estelle v. Gamble, 429 U.S. 97, 103 (1976). The Eighth Amendment
prohibits conditions which involve the unnecessary and wanton
infliction of pain or are grossly disproportionate to the severity
of the crime warranting imprisonment. Rhodes, 452 U.S. at 346,
347. The cruel and unusual punishment standard is not static, but
is measured by "the evolving standards of decency that mark the
progress of a maturing society." Rhodes, 452 U.S. at 346 (quoting
Trop v. Dulles, 356 U.S. 86, 101 (1958)).

Thus, to prevail on a medical care claim under the Eighth
Amendment, an inmate must show that the defendants were
deliberately indifferent to his serious medical needs. See Estelle
v. Gamble, 429 U.S. 97; Rouse v. Plantier, 182 F.3d 192, 197 (3d
Cir. 1999). Persistent severe pain qualifies as a serious medical
need. A medical need is serious where it "has been diagnosed by
a physician as requiring treatment or is . . . so obvious that a
lay person would easily recognize the necessity for a doctor's
attention." Monmouth County Correctional Institution Inmates v.
Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S.

1006 (1988).

"Deliberate indifference" exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197. Furthermore, deliberately delaying necessary medical diagnosis for a long period of time in order to avoid providing care constitutes deliberate indifference that is actionable. See Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993). Deliberate indifference is also evident where officials erect arbitrary and burdensome procedures that result in interminable delays and denials of medical care to suffering inmates. See Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987), cert. denied 486 U.S. 1006 (1998). However, neither inconsistencies or differences in medical diagnoses, nor refusal to consider inmate's self-diagnoses, to summon the medical specialist of the inmate's choice, to perform tests or procedures that the inmate desires, to explain to the inmate the reason for medical action or inaction, or to train the inmate to perform medical procedures can amount to cruel and unusual punishment. See White v. Napoleon, 897 F.2d 103 (3d Cir. 1990) (mere disagreements over medical judgment do not state Eighth Amendment claims).

Applying the aforesaid standard to the circumstances of the case at bar, this Court finds that Plaintiff's claims based on Plaintiff's dissatisfaction with the antiseptic treatment of his arm and neck wounds, same as Plaintiff's concerns about not receiving antibiotics or disappointment over not having a CAT Scan administered are not actionable under § 1983, even though these claims might be cognizable under the state law. See Gatewood v. Hendrick, 368 F.2d 179 (3d Cir. 1966), cert. denied, 386 U.S. 925 (1967) (prisoner who did not claim that he was denied any medical care but rather that he received only inadequate medical care, and gave no indication that he sustained serious physical injury as result of alleged inadequate treatment, failed to state claim for relief); see also Alsina-Ortiz v. Laboy, 400 F.3d 77 (1st Cir. 2005) (a doctor's failure to respond to certain request for services by the inmate, in context of the doctor's continued and regular services, did not deprive the inmate of any meaningful treatment); Boardley v. First Corr. Med., 2004 U.S. Dist. LEXIS 25918 (D. Del. Dec. 21, 2004) (where prison officials failed to treat promptly and properly inmate's ailment and complications led to surgery on his toes, the inmate's allegations did not state a claim under 42 U.S.C. § 1983 because the inmate's temporary pain and loss of mobility did not establish that the inmate suffered a serious injury and medical treatment was eventually given remedying the problem); see also Patterson v. Lilley, 2003 U.S. Dist. LEXIS 11097

(S.D.N.Y. June 20, 2003) (defendants could only be held deliberately indifferent to an existing serious medical condition, not a speculative future medical injury); <u>Jones v. Lockhart</u>, 484 F.2d 1192 (8th Cir. 1973) (allegations of mere differences of opinion over matters of medical judgment fail to state a federal constitutional question); <u>Hyde v. McGinnis</u>, 429 F.2d 864 (2d Cir. 1970) (a difference of opinion between physician and patient did not sustain a claim under § 1983; the conduct must be so harmful that it should be characterized as a barbarous act that shocked the conscience); <u>Church v. Hegstrom</u>, 416 F.2d 449 (2d Cir. 1969) (mere negligence does not suffice to support a § 1983 action); <u>Goff v. Bechtold</u>, 632 F. Supp. 697 (S.D. W. Va. 1986) (denial of preferred course of treatment does not infringe constitutional rights). Therefore, these claims will be dismissed for failure to state a claim upon which relief may be granted.

It is not, however, clear whether Plaintiff's claims against the Medical Staff based on the Medical Staff's full failure to treat Plaintiff's head wound or refusal to record Plaintiff's injuries in Plaintiff's medical record present allegations actionable under § 1983. Therefore, <u>sua sponte</u> dismissal of these claims is not warranted at the instant stage, and these claims will proceed to the next stage.[1] <u>See</u> <u>Rhodes</u>, 452 U.S. at 346; <u>Estelle</u>,

---

[1]

Plaintiff's medical claims against the Officer are, however, dismissed for failure to state a claim upon which relief may be granted. In order to survive dismissal, Plaintiff's claims against

429 U.S. at 103.

## II. Plaintiff's Claims Against NJDOC

Plaintiff's claims against NJDOC are subject to dismissal with prejudice for failure to state a claim upon which relief may be granted.    NJDOC is not a "person" subject to suit under 42 U.S.C. § 1983.    See Will v. Michigan Dept. of State Police, 491 U.S. 58, 68-70 (1989) (holding that States and governmental entities considered "arms of the State" for Eleventh Amendment purposes are not "persons" within the meaning of § 1983); Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (stating that New Jersey Department of Corrections and state prison facilities not "persons" under § 1983).

---

the Officer should asserts facts indicating personal involvement by theOfficer in the alleged wrongs.    Personal involvement by a defendant is an indispensable element of a valid legal claim; such personal involvement may exist only where the named defendant violated the plaintiff's rights either by executing the acts at issue himself or herself, or by directing others to violate the plaintiff's rights (or by tolerating past or ongoing misbehavior of subordinates while having both supervisory power and knowledge of these constitutional violations).    See Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995); Sample, 885 F.2d at 1110; Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).    Conversely, where no personal involvement by the defendant is asserted, the plaintiff's claim against that defendant is subject to dismissal. Rode, 845 F.2d at 1207.    Since Plaintiff's Complaint indicates only that the Officer retrieved an assault weapon and summoned medical help to Plaintiff, Plaintiff's Complaint is silent as to any wrongdoings by the Officer.    See Compl., Exs. A and B.    Therefore, Plaintiff's medical claims against the Officer should be dismissed.

III. **Plaintiff's Medical Claims Against the Warden**

Similarly, Plaintiff's allegations against the Warden fail to state a claim upon which relief may be granted.  It is settled law that supervisory prison personnel may be held liable under § 1983 only if their own actions caused the constitutional deprivation. See Keenan v. City of Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992).  A supervisor may be held liable for the actions of subordinates only if the plaintiff can show that the supervisor: (a) participated in violating the plaintiff's rights; (b) directed others to violate them; (c) as the person in charge, had knowledge of and acquiesced in his or her subordinates' violations; or (d) tolerated past or ongoing misbehavior.  See Baker v. Monroe Township , 50 F.3d 1186, 1190-91 (3d Cir. 1995); Friedland v. Fauver, 6 F. Supp.2d 292, 302-03 (D.N.J. 1998).

Furthermore, where a plaintiff seeks to establish liability based on a supervisor's failure to train or supervise adequately, the plaintiff must show that a need for more or different training or supervision was so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train or supervise could fairly be said to represent official policy.  See City of Canton v. Harris, 489 U.S. 378, 388-92 (1989); Stoneking v. Bradford Area School Dist., 882 F.2d 720, 724-26 (3d Cir. 1989), cert. denied, 493 U.S. 1044 (1990); see also Polk County v. Dodson, 454 U.S. 312, 324 (1981) (stating that a § 1983 claim cannot be

based on <u>respondeat</u> <u>superior</u> liability); <u>Monell v. Department of</u> <u>Social Services of City of New York</u>, 436 U.S. 658 (1978) (holding that supervisory personnel are liable under § 1983 only if they have some personal role in causing the alleged harms or were responsible for some custom or practice which resulted in the violations).

In the case at bar, Plaintiff's allegations are limited to a self-serving assertion that the Warden "is aware of what type of prison he is running. . . . [The Warden] is accountable to [Plaintiff for] not receiving the proper medical attention." <u>See</u> Compl., Ex. A. None of these statements indicates that the Warden participated in violating Plaintiff's rights or directed others to violate them, or had knowledge of and acquiesced in his subordinates' violations, or tolerated past or ongoing misbehavior. (Even if this Court presumes that the Warden is aware that the "[Facility] is considered the Security Group Threat Unit," <u>see</u> <u>id.</u>, this fact does not indicate that the Warden tolerates a misbehavior of his subordinates.)

Consequently, Plaintiff's medical claims against the Warden will be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## II. Plaintiff's Failure to Protect Claims

It appears that Plaintiff also asserts that, as a result of the inactions of the Warden and Officer, Plaintiff was denied protection and incurred serious injuries. Prison officials have a duty under the Eighth Amendment to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-7 (1984)). To state a failure-to-protect claim under 42 U.S.C. § 1983, an inmate must show that (1) he is objectively "incarcerated under conditions posing a substantial risk of serious harm," and (2) the defendant knows of and disregards that risk. Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. Therefore, in order to prevail on his 42 U.S.C. § 1983 claim asserting that his constitutional rights were violated because of the actions of certain officers, an imminent threat to Plaintiff's health and/or life must arise. Specifically, Plaintiff must show that: (1) he was "incarcerated under conditions posing a substantial risk of serious harm"; and (2) that the officers expressly intended to cause Plaintiff harm or knew and disregarded the risk of harm to Plaintiff. See Farmer, 511 U.S. at 837; Whitley v. Albers, 475 U.S. 312, 319 (1985).

In this case, Plaintiff's allegations against the Warden (or the Officer) are limited to the observation that the "[Facility] is considered the Security Group Threat Unit."  <u>See</u> Compl., Ex. A. This fact, however, does not indicate that either the Warden or the Officer was aware of any imminent threat to Plaintiff's life or health but purposely disregarded the risk of harm.  Therefore, Plaintiff's claims against the Warden and Officer based on failure to protect will be dismissed without prejudice.

<u>CONCLUSION</u>

For the reasons stated in this Opinion, Plaintiff's application to proceed <u>in forma pauperis</u> is GRANTED.  Plaintiff's claim against the Medical Staff based on the Staff's full failure to treat Plaintiff's head wound or the Staff's refusal to record Plaintiff's injuries in Plaintiff's medical record will proceed past <u>sua sponte</u> dismissal to the next stage.  Plaintiff's remaining medical claims and Plaintiff's claims against NJDOC will be dismissed with prejudice for failure to state a claim upon which relief may be granted.  Plaintiff's claims against the Warden and Officer alleging failure to protect will be dismissed without prejudice.  An appropriate Order accompanies this Opinion.

/s/ **SUSAN D. WIGENTON**
**United States District Judge**

Date: FEBRUARY 9, 2007