**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JESSE HEMINGWAY,<br><br>                              Plaintiff,<br><br>        v.<br><br>CORRECTIONAL MEDICAL SERVICES, INC., et al.<br><br>                              Defendants. | Civil Action No. 2:07-cv-00364 (SDW) (MCA)<br><br><br>**OPINION**<br><br><br>November 5, 2010 |

**WIGENTON**, District Judge.

Before the Court is Defendant's, Correctional Medical Services, Inc. ("CMS"), motion for summary judgment pursuant to Fed. R. Civ. P. 56(c). This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, this Court **GRANTS** CMS's Motion for Summary Judgment.

**FACTUAL BACKGROUND**

This action arises from allegations by Jesse Hemingway that Defendants, including CMS and its medical staff at Midstate Correctional Facility ("Facility"), violated his constitutional rights in the aftermath of an incident that took place on May 19, 2005, and resulted in Plaintiff being stabbed with icepicks in his arm, neck, and head by three other inmates. Plaintiff sustained injuries after this attack.

On the day of the incident, Plaintiff was seen by several medical staff members ("medical staff") of the Facility. Dr. John Godinsky, examined Plaintiff and documented

1

that Plaintiff sustained two superficial lacerations on the back of his neck, one superficial laceration on his head, and one superficial laceration on his left elbow.  (Def.'s Ex. at 1288.)  Dr. Godinsky prescribed Bacitracin Ointment and the antibiotic Keflex to be taken by Plaintiff for five days, as well as dry dressing on the wounds.  (Def.'s Ex. at 1288.)  Nurse Sandra Catalano took Plaintiff's vitals signs and gave Plaintiff his first dose of antibiotics.  (Def.'s Ex. at 1287.)   On the same day, Nurse Lydia Rivers met with Plaintiff, re-dressed his wounds, and treated his symptoms of headache and pain with 400 milligrams of Motrin.  (Def.'s Ex. at 1291.)  In her notes, Nurse Rivers wrote that "[i]nmate will be followed for these wounds and complaints related to them."  (Def.'s Ex. at 1291.)

On July 10, 2005, Nurse Beverly Rose noted that Plaintiff had a "small amount [of] yellow drainage from top of old head wound" and that she received orders from Dr. Kapchits regarding treatment.  (Def.'s Ex. at 1222.)  On July 28, 2005, Nurse Frank Cooper noted that Plaintiff refused to comply with taking the antibiotic treatment as recommended by the physician.  (Def.'s Ex. at 1181.)  A chart note dated July 28, 2005, states that Plaintiff was "focused on [the] possibility of intra-cranial bleeding" and desired a Computerized Axial Tomography Scan ("CAT scan").  (Def.'s Ex. at 1181.)

On August 28, 2005, Dr. Anuradha K. Reddy visited Plaintiff and noted that he was demanding a CAT scan, and that Plaintiff warned of speaking with this lawyer if the medical staff failed to perform one.  (Def.'s Ex. at 1133.)  Further, Dr. Reddy noted, "he was not ready to listen to any of my explanations, [and] kept saying how you would [not] know what is happening in [his] head without the [CAT] scan."  (Def.'s Ex. at 1133.)

2

Plaintiff claims that CMS and its medical staff are liable to him because the medical staff: (1) did not treat the stab wounds properly by failing to sufficiently disinfect the wounds, administer antibiotics to Plaintiff to ensure that he would not develop any infections, conduct a CAT scan, or provide an examination by a specialist; (2) failed to treat Plaintiff's head wounds in their entirety; and (3) did not record the injuries in Plaintiff's medical record, thus preventing him from obtaining further medical treatment during the remainder of his confinement.

**PROCEDURAL BACKGROUND**

Plaintiff filed a complaint on January 23, 2007, alleging infringement of his Eighth Amendment right against cruel and unusual punishment under 42 U.S.C. § 1983 ("Section 1983").  The defendants included: the New Jersey Department of Corrections ("NJDOC"); Lydell Sherrer, warden of the Facility; Sergeant Seaburne, a corrections employee;  Dr. Burnstein, a member of the medical staff; and CMS.  (Comp. at 4-6, Jan. 23, 2007.)  CMS filed a cross-claim for contribution and indemnity against all other defendants on May 18, 2007.  This Court dismissed Plaintiff's claims against NJDOC with prejudice, and dismissed without prejudice all claims against Defendants Lydell Sherrer and Sergeant Seaburne for failure to state a claim upon which relief may be granted.  (Order, Feb. 9, 2007.)

CMS filed a motion for summary judgment on February 21, 2008, arguing that Plaintiff could not establish a Section 1983 claim.  (Def.'s Summ. J. Mot. at 1, Apr. 1, 2010.)  This Court dismissed the motion for summary judgment without prejudice because after the filing of the motion, pro bono counsel was appointed to represent

Plaintiff.  Thereafter, Plaintiff's counsel filed a motion to withdraw, which was granted on June 23, 2009.

On March 10, 2010, this Court granted CMS leave to re-file the motion for summary judgment.  This Court now reviews CMS's motion for summary judgment and notes that Plaintiff did not submit opposition to the motion.

**LEGAL STANDARD**

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact.  *Anderson*, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in a light most favorable to the nonmoving party. *Masson v. New Yorker*

*Magazine, Inc.*, 501 U.S. 496, 520 (1991).  The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  *Podobuik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).  If the nonmoving party "fails to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. at 323.

**DISCUSSION**

**Eighth Amendment – Medical Care Claim**

Plaintiff alleges that the medical staff, failed to treat his head wound in its entirety and did not record the injuries in Plaintiff's medical record, consequently preventing Plaintiff from obtaining further medical treatment.  (Compl. at 6.)  CMS seeks summary judgment, claiming that Plaintiff has failed to establish by evidence that the medical staff was deliberately indifferent to his medical needs.  (Def.'s Summ. J. Mot. at 4.)

In order to prevail on a medical care claim under the Eighth Amendment, the prisoner must show that the defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A "deliberate indifference" exists when the prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d at 197.  Furthermore, deliberate indifference exists if the defendant "knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to

avoid the harm." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Whereas deliberately delaying a necessary medical diagnosis or erecting arbitrary and burdensome procedures will constitute deliberate indifference, inconsistencies or differences in medical diagnoses do not amount to deliberate indifference. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987).

Defendant's refusal to submit to Plaintiff's demand for a particular approach to his treatment does not constitute deliberate indifference. "'[A] prisoner has no right to choose a specific form of medical treatment,' so long as the treatment provided is reasonable." *Giles v. Med. Contractors CMS*, No. 09-045-SLR, 2010 WL 2802407, at 5, 2010 U.S. Dist. Lexis 71646, at 14 (D. Del. July 15, 2010) (*quoting Harrison v. Barkley*, 219 F.3d 132, 138-40 (2d Cir. 2000)). Nor will a plaintiff avail himself of an Eighth Amendment claim by arguing inadequate diagnosis by the medical staff. *White v. Napolean*, 897 F.2d 103 (3d Cir. 1990) (holding that "mere disagreements over medical judgment do not state Eighth Amendment claims").

Further, prison authorities are allowed considerable latitude in the diagnosis and treatment of prisoners, and even an instance of medical malpractice does not amount to an Eighth Amendment violation. *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). In cases such as this, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which are sound in tort law." *United States ex. rel. Walker v. Fayette County*, 599 F.2d 573, 575 (3d Cir. 1970) (*quoting Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

A genuine issue of material fact does not exist as to whether CMS or its medical staff was deliberately indifferent by allegedly failing to treat Plaintiff's head wound or by refusing to record Plaintiff's injuries in his medical record. Upon reviewing the record, the medical staff did in fact provide treatment to Plaintiff immediately after his attack. The medical staff recorded the injuries, symptoms, and treatment of Plaintiff. Plaintiff's medical records provide sufficient evidence that Plaintiff was regularly checked by the medical staff to ensure the proper healing of the wounds. (Def.'s Ex. at 1288.)

CMS has provided this Court with ample evidence demonstrating that the medical staff did record Plaintiff's injuries as well as notes from follow-up visits by Plaintiff. The records indicate that Plaintiff met with a number of medical staff members who discussed his injuries and reviewed his grievances concerning his dissatisfaction with the treatment he was receiving. At each meeting, the respective staff members summarized their conversation with the Plaintiff and noted any medical treatment that occurred at those meetings.

Based on the record, this Court concludes that no question of material fact exists that would require deliberation by a jury. Plaintiff fails to provide evidence of the "deliberate indifference" element of the medical care claim under the Eighth Amendment, and relies on his own subjective belief as to the alleged inadequacy of his treatment. Therefore, this Court grants CMS's motion for summary judgment as to the Eighth Amendment claim.

**Respondeat Superior**

Defendant CMS moves for summary judgment on Plaintiff's claim under a theory of respondeat superior. (Def.'s Summ. J. Mot. at 7.) For Section 1983 purposes, a

corporation under contract with a state "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability" absent evidence of a policy or custom. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). Under these theories, to demonstrate that CMS is directly liable to Plaintiff for constitutional violations, Plaintiff "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Giles v. Med. Contractors CMS*, No. 09-045-SLR, 2010 WL 2802407, at 4, 2010 U.S. Dist. Lexis 71646, at 11-12 (*quoting Natale v. Camden Cnty. Corr. Facility*, 318 F.3d at 584) (alterations in original). Policy is established when a person with final authority to do so "with respect to the [relevant] action issues an official proclamation, policy or edict." *Miller v. Corr. Med. Sys. Inc.*, 802 F. Supp. 1126, 1132 (D.Del. 1992). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.*

In this case, Plaintiff has not produced any evidence to support a contention that he sustained injuries resulting from the medical staff following a course of treatment that was a policy or custom sanctioned by CMS. Plaintiff has not submitted a response to CMS's motion for summary judgment nor provided this Court with any evidence to support an argument that CMS should be held liable under a theory of respondeat superior for the medical staff's malfeasance. The record does not support an inference that CMS had a policy or custom that violated Plaintiff's constitutional rights. For these reasons, this Court grants CMS's motion for summary judgment.

**CONCLUSION**

Plaintiff failed to respond to CMS's answer to his complaint or motion for summary judgment, and thus failed to provide this Court with any evidence that went beyond the allegations in Plaintiff's complaint.  The Federal Rules of Civil Procedure state that:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.
>
> [Fed. R. Civ. Pro. § 56(e)(2).]

Therefore, CMS is entitled to summary judgment for the reasons stated above. The moving party, CMS, has met its burden of establishing the absence of a genuine issue of material fact in this case and has demonstrated that it is entitled to a judgment as a matter of law.  Defendant CMS's motion for summary judgment is **GRANTED.**

                                                                       s/Susan D. Wigenton, U.S.D.J.

Orig:  Clerk
Cc:    Madeline Cox Arleo, U.S.M.J.
        Parties